IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY CO. | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL ASSOCIATION of | ) | Civil Action No. 4:22-cv-0052-P |
| SHEET METAL, AIR, RAIL AND | ) | |
| AND TRANSPORTATION WORKERS | ) | |
| TRANSPORATION DIVISION and | ) | |
| BROTHERHOOD OF LOCOMOTIVE | ) | |
| ENGINEERS AND TRAINMEN | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS – TRANSPORTATION DIVISION'S ANSWER AND COUNTERCLAIM FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF UNDER THE RAILWAY LABOR ACT**

Pursuant to Fed. R. Civ. P. 15(a)(1), Defendant/Counterclaimant the International

Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division

("SMART-TD" or "the Union") presents the following Answer and Counterclaim.

With regard to the allegations in the Introduction, Plaintiff BNSF Railway (BNSF)

presents a description of its case.   To the extent that allegations are not set out in the Fact section

of the Complaint and responded to herein, any allegation is denied.

1.      SMART-TD admits the allegations contained in Paragraph 1.

2.      SMART-TD admits the allegations contained in Paragraph 2.

3.      SMART-TD admits the allegations contained in Paragraph 3.

4.      SMART-TD admits that itself represents employees employed by BNSF in the

class and or craft of Train Service who are involved in the movement of trains.  SMART-TD is

without sufficient information with regard to the number of daily trains.   Allegations regarding

BLET, require no response from this Defendant.   Any and all other allegations are denied.

5.      SMART-TD admits that the federal court has jurisdiction over this matter.

6.      SMART-TD admits that venue is proper in this district pursuant to 28 U.S.C. §

1391(b).

7.      With regard to the allegations contained in Paragraph 7, SMART-TD admits that

BNSF has on occasion altered  its attendance policies.  SMART-TD admits that its members are

subject to BNSF's Attendance policies. Any and all other allegations are denied.

8.      With regard to the allegations contained in Paragraph 8, SMART-TD only admits

that BNSF implemented an Availability Policy. Any and all other allegations are denied.

9.      SMART-TD only admits the allegations contained in Paragraph 9 as they concern

SMART-TD. Allegations concerning BLET require no response from this Defendant.

10.     With regard to the allegations contained in Paragraph 10, SMART-TD only

admits an arbitration was held before Arbitrator Richard Kasher.  The Award speaks for itself. .

Any and all other allegations are denied.

11.     With regard to allegations contained in Paragraph 11, SMART-TD  only admits

that BNSF implemented its Attendance Guidelines policy.  Any and all other allegations are

denied. .

12.     With regard to the allegations contained in Paragraph 12, SMART-TD  only

admits that certain changes were made in the ATG, most the result of the Rail Safety

Improvement Act.  Any and all other allegations are denied.

13.     With regard to the allegations contained in Paragraph 13, SMART-TD  only admits that BNSF subjected employees to discipline when they determined that the employee did not meet their "low performance" standard.   Any and all other allegations are denied.

14.     With regard to the allegations contained in Paragraph 14, SMART-TD  only admits attendance discipline was removed from PEPA and that they reduced the steps to before an employee could be subject to discipline.  Any and all other allegations are denied.

15.     SMART-TD  admits the allegations contained in Paragraph 15.

16.     With regard to the allegations contained in Paragraph 16, SMART-TD only admits the alleged changes were in retaliation for a favorable award by SMART-TD GO-001. Any and all  other allegations are denied.

17.     With regard to the allegations contained in Paragraph 17, SMART-TD only admits that BNSF included high impact days in the attendance standard. Any and all other allegations are denied.

18.     SMART-TD  admits the allegations contained in Paragraph 18.

19.     SMART-TD admits the allegations contained in Paragraph 19.

20.     SMART-TD denies the allegations contained in Paragraph 20.

21.     SMART-TD admits the allegations contained in Paragraph 21, except that it denies BNSF developed the Hi Viz policy "[a]s a result" of allegations contained in paragraph 20. above.

22.     SMART-TD denies the allegations contained in Paragraph 22.

23.     SMART-TD denies the allegations contained in Paragraph 23.

24.     SMART-TD denies the allegations contained in Paragraph 24.

25.     SMART-TD admits the allegations contained in Paragraph 25.

26.     Paragraph 26 is directed to BLET and requires no response from SMART-TD. To the extent a response is necessary, SMART-TD denies the allegation.

27.     With regard to the allegations contained in Paragraph 27, SMART-TD  asserts that it has no obligation to notify a carrier of its strike intentions.

28.     SMART-TD denies the allegations contained in Paragraph 28.

29.     With regard to the allegations contained in Paragraph 29, SMART-TD only admits the allegations contained in the first two sentences.  The allegations contained in the third sentence are denied.

30.     SMART-TD denies the allegations contained in Paragraph 30.

31.     SMART-TD denies the allegations contained in Paragraph 31.

32.     SMART-TD denies the allegations contained in Paragraph 32.

33.     SMART-TD denies the allegations contained in Paragraph 33.

34.     With regard to the allegations contained in Paragraph 34, BNSF merely reincorporates the allegations contained in Paragraphs 1-33.  As those allegations have been responded to heretofore, no further response is necessary here.  To the extent that any response is deemed necessary, any and all allegations are denied.

35.     The allegations contained in Paragraph 35 merely state conclusions of law with regard to "minor disputes."  To the extent such is a correct recitation, no response is necessary.

36.     SMART-TD denies the allegations contained in Paragraph 36.

37.     SMART-TD admits that its position is that the dispute over BNSF's Hi Viz policy is a major dispute under the Railway Labor Act, ("RLA"), 45 U.S.C. § 151, et seq. The remaining allegations of Paragraph 37 are denied.

38.     SMART-TD admits that its position is that it has the legal right to engage in self-help should BNSF proceed with implementation of its Hi Viz policy in violation of the RLA. The remaining allegations of Paragraph 38 are denied.

39.     With regard to the allegations contained in Paragraph 39, BNSF merely reincorporates the allegations contained in Paragraphs 1-33.  As those allegations have been responded to heretofore, no further response is necessary here.  To the extent that any response is deemed necessary, any and all allegations are denied.

40.     With regard to the allegations contained in Paragraph 40, BNSF recites the text of 45 USC Section 152 First.  To that extent, no response is necessary.

41.      Paragraph 41 states conclusions of law to which no response is required. To the extent a response is necessary, SMART-TD denies the allegations of Paragraph 41.

42.     SMART-TD denies the allegations contained in Paragraph 42.

To the extent not specifically admitted hereto, any and all allegations are denied.

SMART-TD denies that BNSF is entitled to any of the relief requested in its Prayer.

## AFFIRMATIVE AND OTHER DEFENSES

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND  DEFENSE

The Court is without jurisdiction to grant injunctive relief herein by virtue of the

provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq*. Plaintiff failed to comply with

the obligations imposed by law prior to unilaterally instituting major changes in working

conditions involved in this labor dispute, has failed to exhaust the available governmental

machinery of mediation through the National Mediation Board ("NMB"), has failed to comply

with the status quo provisions of Sections 2 Seventh and 6 of the RLA, 45 U.S.C. §§ 152

Seventh, 156, and has failed to comply with its duty to exert every reasonable effort to make and

maintain agreements under Section 2 First of the RLA, 45 U.S.C. § 152, First, and is therefore

precluded by the provisions of the Norris-La Guardia Act, and particularly Section 8 thereof, 29

U.S.C. § 108, from obtaining the relief sought herein or any injunctive relief.

## THIRD DEFENSE

The underlying dispute is properly characterized as a "major dispute" under Sections 2

and 6 of the RLA, 45 U.S.C. §§ 152 and 156.

### COUNTERCLAIM FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF UNDER THE RAILWAY LABOR ACT

Plaintiff, the Transportation Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers ("SMART-TD") seek declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief against Defendant Burlington Northern Santa Fe Railway Company ("BNSF" or "the Carrier").

### JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (Act regulating commerce, *viz.*, the Railway Labor Act, 45 U.S.C. § 151, *et seq.*), and 2201 (declaratory judgments).

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c) because BNSF operates through this judicial district, and because BNSF is subject to personal jurisdiction here.

### PARTIES

3.     Plaintiff SMART-TD is the duly authorized representative for the purposes of the Railway Labor Act ("RLA" or "the Act") of the craft or class of train service employees, including Conductors, employed by BNSF, and is a "representative" as defined by Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth.  SMART-TD is located at 24950 Country Club Blvd., Ste. 340, North Olmsted, OH 44070.

4.     SMART-TD GCA GO-001 is the subordinate body with jurisdiction over certain predecessor railroads including the former Great Northern line. The General Chairperson ("GC") of GCA GO-001 is Joseph M. LaPresta.. SMART-TD GCA GO-009 is the subordinate body with jurisdiction over the former Atchison Topeka & Santa Fe ("AT&SF"). The GC of GCA

GO-009 is Scott Swiatek. SMART-TD GCA GO-009 is the subordinate body with jurisdiction over the former Coastlines. The Acting GC of GCA GO-017 is Johnny Martinez. SMART-TD GCA GO-020 is the subordinate body with jurisdiction over the craft or class of Yardmasters employed by BNSF and its predecessors. The GC of GCA GO-020 is Justin Schrock. SMART-TD GCA GO-341 is the subordinate body with jurisdiction over the former ATSF Coast and Los Angeles Junction. The GC of GCA GO-341 is Matthew Burkart. SMART-TD GCA GO-386 is the subordinate body with jurisdiction over the former Great Northern. The GC of GCA GO-386 is Larry Miller. SMART-TD GCA GO-393 is the subordinate body with jurisdiction over the former AT&SF Western lines. The GC of GCA GO-393 is Kevin Kime.

5.      Defendant BNSF is a carrier by rail as defined in the ICC Termination Act, 49 U.S.C. § 10102, and a carrier as defined in Section 1 First of the RLA, 45 U.S.C. § 151, First. BNSF is headquartered at 2600 Lou Menk Drive, Fort Worth, Texas, and operates within this judicial district.

## CLAIM FOR RELIEF

### Collective Bargaining under the Railway Labor Act

### COUNT I

6.      Collective bargaining between railroads and their employees' representatives over rates of pay, rules and working conditions is governed by the RLA. Collective-bargaining agreements thereunder are amended through the service of written notice of intended changes in agreements affecting rates of pay, rules or working conditions, pursuant to Section 6 of the RLA, 45 U.S.C. § 156. Such proposals, called "Section 6 Notices," are negotiated in conferences between representatives designated and authorized by the carrier or carriers, and by the collective

8

bargaining representative(s) of their employees. 45 U.S.C. §§ 152 Second, 156. If conferences fail, the dispute is subject to mediation by the National Mediation Board ("NMB"). 45 U.S.C. § 155 First. If mediation fails, the President of the United States may appoint a Presidential Emergency Board ("PEB") to investigate and issue recommendations for settlement of the dispute. 45 U.S.C. § 160. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

### The Status Quo Requirement under the Railway Labor Act

7.      Pursuant to § 2 First, 45 U.S.C. § 152 First, the Act requires that the parties make and maintain agreements. As noted, the Act also provides very specific and mandatory procedures for how agreements can be changed or modified. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

8.      Section 2 First of the RLA, provides:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to <u>make and maintain agreements concerning rates of pay, rules, and working conditions</u>, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First (emphasis added).

9.      Furthermore, the RLA mandates a very specific procedure to change working conditions. Section 6 of the RLA, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice.

45 U.S.C. § 156.

10.     Taken together, these sections of the RLA require carriers to maintain the status quo with respect to rates of pay, rules, and working conditions until the mandatory notice, negotiation, and mediation procedures of the Act are completed.

11.     Federal courts are empowered to issue injunctions to stop unilateral action by a rail carrier during this process of resolution.

12.     SMART-TD and BNSF are parties to CBAs on a national and local level that control the terms and conditions of employment.

13.     SMART-TD and BNSF have been in engaged in in "national handling" since November 1, 2019, to negotiate wages, work rules, and other terms and conditions of employment. "National handling" is bargaining in the form of a multiemployer and multi-union groups.

14.     The parties have additionally been bargaining on a local level over various matters.

15.     Negotiations were initiated by the service of Section 6 Notices, which included various changes to employee availability. For example,. SMART-TD's Section 6 Notice contained a proposal to "establish additional rest opportunities and the ability to mark off for family needs, visits to a primary care physician, and emergencies related to quality of life, without penalty;" and "[e]stablish paid sick leave for all train and engine service employees, without censure or discipline." BNSF, through its bargaining representative the National Carrier Conference Committee, has put forth a proposal in its Section 6 notice wherein it has called for "better and more predictable work schedules" to "enhance employee quality of life."  The parties have been discussing these matters at the bargaining table.

16.     Despite these matters being in active negotiation, on January 4, 2022, the SMART-TD General Chairpersons ("GCs") representing employees on BNSF were notified via Zoom that BNSF intended to present its new High Visibility ("Hi Viz") attendance policy. BNSF refused to answer any questions posed by the GCs.

17.      On January 10, 2022, BNSF officially announced its intentions to implement its "Hi Viz" Policy effective February 1, 2022.

18.     Under this new policy, employees begin with 30 points, which are then deducted based on certain enumerated unavailability events, including fatigue, sickness, and family emergency. The policy then provides for "good attendance credits," where an employee is awarded four points for any 14-day period in which they work without an "unavailable" event. If an employee is absent from work because of federally protected leave under the Family Medical Leave Act ("FMLA") or off on union business, s/he is <u>not</u> eligible for any good attendance credit for that 14-day period..

19.     On January 11, 2022, the SMART-TD General Chairpersons representing employees on BNSF objected to the Carrier's unilateral action, writing to the SMART Transportation Division President Jeremy Ferguson for assistance.

20.     By letter dated January 12, 2022, President Ferguson responded to the GCs, stating in pertinent part that the GCs were permitted to conduct a polling of their members as noted above. Said letter further cautioned that "the approval of this proposition by a General Committee, as outlined above, does not constitute imminent authority to engage in any strike action, as <u>additional steps must be taken under the governing provisions of the SMART Constitution</u>, **and must be handled in accordance with the Railway Labor Act**, as amended." (emphasis added).

21.     By unilaterally changing the terms and conditions of employment without bargaining, BNSF has violated the status quo provisions of the Railway Labor Act, 45 USC Section 152 First, Seventh, and Section 160.

22.     The carrier's action creates a major dispute under the provisions of the Railway Labor Act and entitles SMART-TD to a status quo injunction prohibiting BNSF from making any change to the wages, rules and working conditions without exhausting the mandatory process specified in Section 6 of the Act.  45 USC Section 160.

## COUNT II

23.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 22 as if fully set forth herein.

24.     Section 2 Third of the Railway Labor Act provides:

> "Representatives, for the purpose of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representative by the other; and either party shall in any way interfere with, influence, or coerce the other in its choice of representatives." 45 U.S.C. § 152 Third.

25.     Section 2 Fourth of the Railway Labor Act provides:

> "Employees shall have the right to organize and bargain collectively through representative of their own choosing… No Carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize or assist in organization the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees." 45 U.S.C. § 152 Fourth.

26.     The Hi Viz policy discriminates against individuals who are union officers and interferes with the ability of the union to carry out its legal obligation to represent its membership by penalizing officers and placing them in a worse position regarding attendance points.

12

27.     BNSF's actions regarding union mark off violates the Railway Labor Act and entitles SMART-TD to an injunction barring the Hi Viz policy from going into effect.

.

## COUNT III

### BNSF'S ATTENDANCE POLICY VIOLATES FMLA

28.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 27 as if fully set forth herein.

29.     The FMLA prohibits employers from "interfering with, restraining, or denying" an employee's exercise of FMLA rights, 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1); and from "discriminating or retaliating against an employee … for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

30.     BNSF's Hi Viz policy violates the FMLA by punishing employees who use FMLA leave, by treating them differently than those on military leave or company business leave.

31.     BNSF's action violates not only the FMLA,  but also the RLA.  As such, SMART-TD is entitled to an injunction barring the Hi Viz policy from going into effect.

32.     To the extent that any employee is adversely affected by this Hi Viz, they are entitled to the full remedies provided under the FMLA.

**WHEREFORE,** Plaintiff requests that this Court:

A.     Issue a Declaratory Judgment that BNSF's actions unlawfully change the status quo and violate the Carrier's obligations under the RLA;

B.     Bar BNSF from implementing any change with regard to unilaterally implementing its Hi Viz Attendance Policy;

C.      Issue injunctive relief enjoining Defendant BNSF, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it from implementing its Hi Viz Attendance Policy;

D.      Award SMART-TD its costs and attorney's fees incurred in this proceeding; and

E.      Grant SMART-TD such other and further relief as the Court deems just and proper.

Dated: January 27, 2022

Respectfully Submitted:

  /s/ Sanford R. Denison
SANFORD R. DENISON
Tex. Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Ave., Suite 550
Dallas, TX 75214
Tel.: (214) 637-0750; Fax.: (214) 637-0730
Email: denison@baabdenison.com

KEVIN C. BRODAR
Ohio Bar No. 52854
General Counsel
ERIKA A. DIEHL-GIBBONS*
Associate General Counsel
SHAWN M. MCKINLEY*
Assistant General Counsel
Ohio Bar No. 95836
SMART-TD
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
Tel:  (216) 228-9400; Fax: (216) 228-0937
Email: kbrodar@smart-union.org
Email: smckinley@smart-union.org

*Counsel for Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD")*

*Application for Admission Pro Hac Vice Forthcoming*

14

## CERTIFICATE OF SERVICE

I certify that on this 27ᵗʰ day of January 2022 a true and correct copy of the foregoing document was served on counsel for all parties of record by a means permitted by Rule 5(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P.").

                                     */s/ Sanford R. Denison*
                                     SANFORD R. DENISON