**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FT. WORTH DIVISION**

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff-Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:22-cv-052-P |
| | ) | |
| INTERNATIONAL ASSOCIATION OF | ) | |
| SHEET METAL, AIR, RAIL AND | ) | |
| TRANSPORTATION WORKERS – | ) | |
| TRANSPORTATION DIVISION and | ) | |
| BROTHERHOOD OF LOCOMOTIVE | ) | |
| ENGINEERS AND TRAINMEN, | ) | |
| | ) | |
| Defendants-Counterclaim Plaintiffs. | ) | |
| | ) | |

**DEFENDANT-COUNTERCLAIM PLAINTIFF BROTHERHOOD OF LOCOMOTIVE**
**ENGINEERS AND TRAINMEN'S REPLY IN SUPPORT OF ITS**
**MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ...................................................................................................................1

**ARGUMENT** .........................................................................................................................2

I.     BNSF HAS IGNORED THE CBA "UNION BUSINESS" PROVISION WHICH ESTABLISHES A MAJOR DISPUTE, AND THAT ITS POLICY FACIALLY DISCRIMINATES AGAINST UNION ACTIVITY………..................................................2

II.    VARIOUS TIME OFF PROVISIONS OF THE BNSF HI VIZ ATTENDANCE POLICY CREATE A MAJOR DISPUTE..........................................................................................6

III.   THE FMLA PROVISIONS OF THE BNSF HI VIZ ATTENDANCE POLICY VIOLATE THE FMLA AND ARE A MAJOR DISPUTE...................................................6

IV.   BNSF BREACHED THE STATUS QUO BY IMPLEMENTING MAJOR DISPUTE ISSUES FROM SECTION 6 BARGAINING....................................................................8

V.    A STATUS QUO INJUNCTION REMEDY IS WARRANTED IN ANY EVENT….......9

**CONCLUSION** .....................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**

*Atlas Air, Inc. v. Air Line Pilots Assoc.*,
232 F.3d 218 (D.C. Cir. 2000)........................................................................ 4, 5

*Bailey v. Pregis Innovative Packaging, Inc.*,
600 F.3d 748 (7th Cir. 2010) ...................................................................6, 7, 8

*Bell v. CSX Transp., Inc.*,
WL 2146917 (D. Md. 2019)……………………………………………………6

*BNSF Ry. v. Brotherhood of Locomotive Engineers and Trainmen*,
No. 1:21-cv-5965 (N.D. Illinois 2021)……………………………………………9

*Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry.*,
 894 F.2d 1463 (5th Cir. 1990)……………………………………………………5

*Bhd. of R.R. Trainmen v. Cent. of Georgia Ry. Co.*,
305 F.2d 605 (5th Cir. 1962)……………………………………………………5

*Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R. Co.*,
363 U.S. 528 (1960)……………………………………………………………....9

*Bhd. of Locomotive Engineers and Trainmen v. Union Pacific Railway, Co.*,
2021 WL 2784318 (W.D. Texas 2021 )……………………………………………...5

*Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*,
491 U.S. 299 (1989)....................................................................................3, 4

*Dyer v. Ventra Sandusky, LLC*,
934 F.3d 472 (6th Cir. 2019)....................................................................6, 7

*Wheeling & Lake Erie Ry. Co.*
789 F.3d 681 (6th Cir. 2015)....................................................................2, 3, 8

*Wright v. Union Pac. R.R. Co.*,
990 F.3d 428 (5th Cir. 2021)………………………………………………..……..5

**<u>DOL Opinion Letters</u>**

1999 FMLA Ltr., 1999 WL 1002428 (January 12, 1999) ........................................7, 8

2018 FMLA Ltr., 2018 WL 4678694 (August 28, 2018)..............................................8

**<u>Statues and Regulations:</u>**

45 U.S.C. §§ 152 Third and Fourth..............................................................................5, 9

29 U.S.C. § 2614(a)(2)……………………………………………………….……7

29 C.F.R. § 825.220..................................................................................................8

## INTRODUCTION

Defendant-Counterclaim Plaintiff Brotherhood of Locomotive Engineers and Trainmen ("BLET") submits this reply memorandum in support of its motion for a preliminary injunction against Plaintiff-Counterclaim Defendant BNSF Railway Company ("BNSF"). Despite BNSF's inapt and supercilious literary references, the fact remains that it advances obviously insubstantial claims under the collective bargaining agreement - the hallmark of a major dispute.

First, BNSF once again completely *ignores* the express language in the CBA which prohibits it from even *considering* union business leave as being unavailable for work. Since the railroad has advanced no argument about this language, it *ipso facto* has violated the major dispute "obviously insubstantial" test. None of BNSF's verbal legerdemain or belittling of its employees' representatives changes this, including its penchant for ignoring the cases in which the union has prevailed under the major dispute test. BNSF ignores that the union business section of the policy discriminates against union activity on its face, and there is no need to show irreparable injury in this circuit.

Second, BNSF's "no harm, no foul" argument about its patent interference with union representation also ignores the facially unlawful nature of its policy and it is misplaced. BLET need not show irreparable injury in any event.

Third. BNSF's argument that the BLET lost an arbitration in 1999 about reasonable lay off privileges also proves nothing. That was under a different policy. The current High Visibility ("Hi Viz") attendance undeniably eliminates more than *seventy percent* of lay off time. That is, we are not talking here about ten percent, nor twenty percent, but more than seventy percent of the time away from work engineers have had in the past. This is just unconscionable, let alone in a global

1

pandemic where the employer is extremely profitable and has laid off thousands of employees during a supply chain crisis.

Fourth, BNSF's argument that other unions have lost displacement rights and paid leave cases in arbitration is unavailing. Those cases involved other unions with different language.

Fifth, BNSF simply misstates the case law on FMLA, highlighting the frivolous nature of its argument. Its policy is discriminatory on its face.

Lastly, in the alternative a status quo injunction is warranted during the pandemic until arbitration is completed. Once again, BNSF employs a misleading semantic tool – saying it does not "penalize" workers of COVID-19 illness – when it assuredly uses such illness to make it more likely they are discharged. Its claims that workers will not come to work sick and infect others to avoid discharge are simply self-serving conclusions. At the very least and as a last resort the Court should preserve the status quo pending the pandemic and arbitration. If the Court is sensitive to missing most of the Court's staff because the Omicron variant, it surely recognizes the necessity of protecting the engineers and public just the same, particularly when the FMLA rights of the BNSF employees have been illegally abridged. The Court must do what is in the public interest in equity.

## ARGUMENT

I.   **BNSF HAS IGNORED THE CBA "UNION BUSINESS" PROVISION WHICH ESTABLISHES A MAJOR DISPUTE, AND THAT ITS POLICY FACIALLY DISCRIMINATES TO QUELL UNION ACTIVITY**

While BNSF hollowly string cites minor dispute cases in which unions have not prevailed, (and conveniently omits the cases to the contrary), the Court here should focus on the most recent case in which this union has prevailed. *BLET v. Wheeling & Lake Erie Ry. Co.,* 789 F.3d 681 (6th Cir. 2015) ("*Wheeling*"). In *Wheeling*, the Court held that it was a major dispute when the company

2

used management to staff trains in lieu of a conductor despite the labor agreement mandating that "all assignments (regular or extra) shall consist of not less than one (1) conductor."

BNSF should note that BLET, who the railroad smugly asserts has an inability to even understand the minor/major dispute doctrine, *prevailed as Plaintiff in that case.* But it is no wonder that it did. It is just a matter of the English language. "Shall" means shall. This is the essence of the test in *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303-04, 312 (1989) ("*Conrail*").

To be sure, the railroad in *Wheeling* could have asserted that the management officials were functioning as "conductors," and thus there was an "arguable basis" for its position, but the *Conrail* test does not permit such semantic nonsense. A carrier cannot just articulate any theory that flies in the face of language and guarantee an arbitration. That is frivolous and under *Conrail*, the Court is a gatekeeper that prevents the employer from pressing frivolous positions to arbitration. Again, this prohibits the rail carrier from circumventing the negotiation process and the economic pressures necessary to settle the CBA.

But here, BNSF does not even frame some illogical semantic interpretation. Rather, it *abandons* trying to do so at all and diverts the attention of the Court away from the prime language in dispute. On page 5 of BNSF's brief, it again simply cites the more limited 1972 Rule 64 language instead of even mentioning the more recent November 24, 2003, Memorandum of Agreement between the parties (ECF Doc. 21, BLET Ex. 1). This more recent union business leave agreement in Section 1.2 expressly provides that "[i]n the application of the foregoing a union officer laying off for the purposes stipulated *will not be considered as laying off or missing a call*." (*Id.*) (emphasis added). It is undisputed that "laying off or missing a call" means being unavailable for work duties. (*ECF. No. 41, ¶ 9(a), Page ID 605, ¶* ) (*ECF. Doc. 49-1, ¶ 7, Page ID 818*). And it

3

is undisputed that the Hi Viz policy considers the engineer taking union business as being unavailable for work duties. That is not a mere "passable" case for a major dispute as BNSF so imperiously asserts; it is a conclusive one.

Under Section 1.2, it does not matter if BNSF "considers" the engineers as being unavailable for the Hi Viz policy attendance credit, or if it considers it negatively on a personnel evaluation as being unavailable for work in the future, or if it considers it as unavailability for any other work rule or perk it enacts in the future. Under Section 1.2, BNSF cannot "consider" it as being unavailable for work – period. *BNSF has provided no argument to the contrary.*

From the outset of this case, then, this should have been case closed against BNSF. But it is ever clearer after voluminous briefing – giving BNSF every chance in the world – that it cannot explain this language away. Rather, it ignores it. *Query*:  If BNSF cannot provide *anything* to the Court in argument of this specific language, then how can the Court plausibly conclude this is a minor dispute? Where is the Court of Appeals to find BNSF's argument on Section 1.2? *Nowhere*.

Moreover, the union need not demonstrate any chilling effect as BNSF asserts. In major disputes, "district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury." *Wright v. Union Pac. R.R. Co*., 990 F.3d 428, 435 (5th Cir. 2021), quoting *Conrail*, 491 U.S. at 303.

Moreover, on its face the policy exempts military leave from any penalty for being unavailable but punishes the use of the similar union leave. It thus targets union leave and the union activity associated with it for harsher treatment on its face. This is thus a facially discriminatory policy, just as in *Atlas Air, Inc. v. Air Line Pilots Ass'n,* 232 F.3d 218, 226 ( D.C. Cir. 2000)("where the challenged modification to the status quo is far from merely formal" and

has "a real and material impact on the conditions of employment and is justified on no other grounds than union certification, we may presume that the carrier's actions were motivated by anti-union animus and are in violation of RLA Section 2, Third and Fourth)." The chilling effect on the Union is presumed, as it violates the RLA. *Bhd. of R.R. Trainmen v. Cent. of Georgia Ry. Co.*, 305 F.2d 605, 608 (5th Cir. 1962)("*Central of Georgia*").

Recently, in *BLET v. Union Pacific Railway, Co*., 2021 WL 2784318 at *3 (W.D. Texas 2021)(attached in Appendix), the district court enjoined an RLA Section 2, Third and 2, Fourth violation based upon anti-union animus, and wrote:

> … the Fifth Circuit has recognized that federal courts have jurisdiction over even minor disputes in the "exceptional circumstance involv[ing] actions taken by a carrier for the purpose of weakening or destroying a union." *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. ("Railway Carmen")*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990), *cert. denied*, 498 U.S. 846 (1990) (citing *Bhd. of RR. Trainmen v. Cent. of Georgia Ry. Co. ("Central of Georgia")*, 305 F.2d 605, 608 (5th Cir. 1962)). Under such an exceptional circumstance, federal courts can have jurisdiction under "RLA § 152 [which] protect[s] employees' freedom to organize and to make choice of their representatives without company interference or pressure." *Wright*, 990 F.3d at 435 (quoting *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants ("TWA")*, 489 U.S. 426, 440 (1989)) (internal quotations omitted). "Conduct in violation of [§ 152] is subject to restraint by federal court injunction, regardless of whether such conduct also generates a major dispute." *Ruby v. TACA Int'l Airlines, S. A.*, 439 F.2d 1359, 1364 (5th Cir. 1971).

Thus, even if the Court considers the HI Viz union business leave provisions a *minor* dispute, they are *facially* discriminatory as in *Atlas* to discourage union activity. The policy must therefore be enjoined as an effort to weaken the union. *Id*.; *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry.*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990), *cert. denied*, 498 U.S. 846 (1990); *Central of Georgia, supra.*

5

## II.      VARIOUS TIME OFF PROVISIONS OF THE BNSF HI VIZ ATTENDANCE POLICY CREATE A MAJOR DISPUTE

BNSF's argument that it has provided reasonable lay off privileges is likewise spurious. Engineers concededly will suffer a reduction in days to mark off from *84 to a mere 22 days per year*. (*BLET VC ¶ 25*). That is nearly a seventy-five percent reduction. It is immaterial that some of the work week is on-call time. A seventy percent reduction is not unsupportable by any stretch of the imagination. All BNSF can argue is that BLET lost this issue in arbitration in 1999 (which did not involve this policy) or other unions have lost cases. This proves nothing. The same is true with the displacement language in the CBA. Arbitrations by other unions with other language are meaningless here. Again, BNSF has not raised a relevant, legitimate argument to advance an arguable basis to diminish the ability of employees to take contractually negotiated time off. This is thus a major dispute.

## III.      THE FMLA PROVISIONS OF THE BNSF HI VIZ ATTENDANCE POLICY VIOLATE THE FMLA AND ARE A MAJOR DISPUTE

BNSF's effort to escape the recent holding of  *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472 (6th Cir. 2019) on the exact FMLA issue presented here is completely disingenuous. *Dyer* is plainly on "all fours." So instead, BNSF cites two cases which do not even present the same issue: 1) *Bailey v. Pregis Innovative Packaging, Inc.*, 600 F.3d 748, 752 (7th Cir. 2010)("*Bailey*") and 2) *Bell v. CSX Transp*., *Inc*., WL 2146917 (D. Md. 2019).[1] Both of those cases dealt with whether an employer can prevent an employee from *earning* credit for the FMLA absence towards perfect attendance. Both courts said employers can do so. So, as in *Bailey*, the court held that one month of FMLA taken by the employee need not be credited toward a year of good attendance.

---

[1] BNSF's brief does not provide this unreported case as required by Judge Pittman's specific requirements on Motion Practice, Section II.d. Thus, it should be ignored, and is not binding in any event.

But the issue in *Dyer* is not whether you can *earn* attendance credit or awards under an attendance policy while on FMLA; it is whether you are forced to *forfeit* the credit already earned when the FMLA leave commences. As the Department of Labor ("DOL") and the Seventh Circuit in *Bailey* have recognized, the partial credit towards a perfect attendance reduction of discipline points is an "employment benefit" which cannot be taken away because of the use of FMLA. *Bailey*, at 752 (29 U.S.C. § 2614(a)(2) provides that the taking of FMLA leave "shall not result in the loss of *any employment benefit* accrued prior to the date on which the leave commenced.")(emphasis added).

The *Dyer* court wrote at 477:

> The regulations state that "[a]t the end of an employee's FMLA leave, benefits must be resumed in the same manner and at the same levels as provided when the leave began." 29 C.F.R. § 825.215(d)(1). Whereas an employee is not entitled to "accrue any additional benefits or seniority during unpaid FMLA leave[,] [b]enefits accrued at the time leave began ... must be available to an employee upon return from leave." Id. § 825.215(d)(2). The FMLA defines "employment benefits" expansively to mean "all benefits provided or made available to employees by an employer, including ... sick leave, [and] annual leave," whether provided by practice or written policy. See 29 U.S.C. § 2611(5). Point reduction fits within this definition, because it is both a benefit Ventra Sandusky affords its employees to flexibly manage their absences, and because the reduction of a point effectively awards an additional day of allowed absence, akin to awarding sick leave. Consistent with this approach, the Seventh Circuit has held that "wiping a point off the absenteeism slate is indeed an employment benefit." *Bailey v. Pregis Innovative Packaging, Inc.,* 600 F.3d 748, 750–51 (7th Cir. 2010). In other words, Dyer's FMLA leave could freeze the accrual of attendance but could not reset it; upon returning, Dyer was entitled to the days of attendance he had accrued when leave began and to continue accruing them in the same way.

*Dyer* squarely held that an employer cannot forfeit earned attendance credit because of an FMLA leave, just like you cannot penalize the person for accrued time towards vacation, or seniority, or insurance or any other benefit because of the use of FMLA. That is a flagrant penalty prohibited by the ("DOL") for decades *over five separate presidential administrations*, being expressly affirmed as recently as 2018. See 1999 FMLA Ltr., 1999 WL 1002428, at *2 (January

12, 1999); 2018 FMLA Ltr., 2018 WL 4678694, at *2 (August 28, 2018). BNSF just ignores the DOL position.

BNSF also ignores that the Hi Viz policy discriminates against the use of FMLA because it exempts favored military leave from breaking the good attendance credit but punishes FMLA for this reason. On its face, it is discrimination prohibited by FMLA regulation. 29 C.F.R. § 825.220(a)(1). FMLA regulations prohibit employers from "discriminating or retaliating against an employee … for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). Employers, therefore, cannot consider "FMLA leave as a negative factor in employment actions" and must provide an employee who takes FMLA leave with the same benefits that "an employee on leave without pay would otherwise be entitled to [receive]." *Id.* The removal of attendance points is just such a proscribed FMLA "employment benefit" which cannot be taken away because of the use of FMLA. *Bailey*, *supra*, at 752.

Because BNSF has no arguable basis to claim it was privileged to break the law and enact a completely, facially illegal FMLA policy under the terms of CBA, this is assuredly a major dispute that requires the policy to be immediately enjoined.

## IV.     BNSF BREACHED THE STATUS QUO BY IMPLEMENTING MAJOR DISPUTE ISSUES FROM SECTION 6 BARGAINING

Moreover, management cannot seek to change terms in Section 6 negotiations and then failing to obtain such terms, impose them during Section 6 negotiations. While BNSF claims that *Wheeling* did not so hold, BNSF has *no explanation* why the *Wheeling* court, like many other courts in the major dispute arena, look at what was proposed in negotiations as a factor. As in *Wheeling*, BNSF breached the status quo as to clear, express language. It thus must be enjoined from further application of the policy and the status quo should be restored. *Id*. at 697.

## V.    A STATUS QUO INJUNCTION REMEDY IS WARRANTED IN ANY EVENT

Lastly, BNSF argues that the status quo injunction sought by BLET as an alternative remedy to preserve the efficacy of arbitration is not warranted. Just like the RLA Section 2, Third and 2, Fourth claims stated above, which provide for an injunction even if a minor dispute is involved, the United States Supreme Court has concededly held that a court may grant a status quo injunction to aid arbitration of a minor dispute. *Brotherhood of Locomotive Engineers v. Missouri–Kansas–Texas R. Co.*, 363 U.S. 528, 531 (1960)("M-K-T"). Again, this is no wonder. For, the ancient maxim of equity states: "*Equity will not suffer a wrong to be without a remedy*."

Absent the Court enjoining BNSF from further implementation of the Hi Viz policy, engineers will assuredly come to work sick and COVID-19 will be spread. It is ironic that BNSF points fingers at BLET for being hypocritical by "contesting" the Biden administration's COVID-19 vaccine mandate in *BNSF Ry. et al. v. BLET*, No. 1:21-cv-5965 (N.D. Illinois 2021). But unbeknownst to this Court, that case was ironically yet another instance in which BNSF avoided the Fort Worth, Texas federal judiciary and instead filed in Chicago, Illinois. All that BLET was contesting was that BNSF refused to negotiate the mandate. BNSF asserted in the Chicago litigation that it must comply with the mandate *because of the dire pandemic.*

Here, BNSF does not identify how some hypothetical arbitrator can remedy innocent engineers getting infected by COVID-19 carrying workers who are too fearful to take time off work if symptomatic. All BNSF says is that it does not assess points for COVID-19; but again, this is semantics. It will break attendance credit for such sickness and make it more likely that an engineer is discharged. Given the complete draconian nature of this policy, it is no wonder that employees will come to work sick. And, no arbitrator may remedy the tragedy of an engineer exposed at work who inadvertently passed Omicron on to elderly parents who perish.

9

Equity will not suffer such a wrong without providing relief. This sort of harm is not speculative in a global pandemic where the Omicron variant is a hundred times more contagious and many, many times more lethal than the ordinary flu. This courthouse was nearly vacant during the temporary injunction hearing because of an outbreak of the Omicron variant. Engineers are not exempt either. They are just as apt to catch it and/or spread it all over this nation.

In the final analysis, the Court *does* have the authority and *duty* to do the right thing in equity. The issues here are not whether the policy is good or bad to be sure.  The issues boil down to the public interest. Even if it finds there is a minor dispute, in these exceptional circumstances the Court should take measures to *protect the public interest* – just as BNSF said it was doing in the Chicago vaccine mandate case.

## CONCLUSION

Accordingly, for all the foregoing reasons set forth herein, the BLET respectfully requests that the Court deny BNSF's motion for a preliminary injunction and grant the BLET's motion for a preliminary injunction to enjoin BNSF from implementing its Hi Viz policy.

Dated: February 11, 2022                     Respectfully submitted,


/s/ James Petroff
James Petroff (*N.D. Tex. Bar*)
Joshua D. McInerney (*N.D. Tex. Bar Admission Pending*)
**WENTZ, MCINERNEY, PEIFER & PETROFF, LLC**
3311 Bear Point Circle
Powell, OH 43065
Phone: (614) 756-5566
jpetroff@lawforlabor.com
jmcinerney@lawforlabor.com

Rod Tanner (Texas State Bar No. 19637500)
Tanner and Associates, PC
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
Ph: 817.377.8833
Fax: 817.377.1136
rtanner@rodtannerlaw.com

*Counsel for Defendant BLET*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2022, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, which will provide electronic notice and copies of such filing to the parties.

/s/ James Petroff

11