IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FT. WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Plaintiff-Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:22-cv-052-P |
| | ) | |
| INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS – TRANSPORTATION DIVISION and BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, | ) ) ) ) ) ) | |
| | ) | |
| Defendants-Counterclaim Plaintiffs. | ) ) | |

**APPENDIX FOR BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN'S REPLY IN SUPPORT OF ITS
MOTION FOR A PRELIMINARY INJUNCTION**

NOW COMES, Defendant Brotherhood of Locomotive Engineers and Trainmen and files this Appendix for its Reply in Support of its Motion for a Preliminary Injunction.

| **DESCRIPTION** | **PAGE NO.** |
|---|---|
| *BNSF Ry. v. Brotherhood of Locomotive Engineers and Trainmen,* No. 1:21-cv-5965 (N.D. Illinois 2021) | App. 1-5 |

Dated: February 11, 2022                    Respectfully submitted,

*/s/ James Petroff*
James Petroff (*N.D. Tex. Bar*)
Joshua D. McInerney (*N.D. Tex. Bar Admission Pending*)
**WENTZ, MCINERNEY,**

                    **PEIFER & PETROFF, LLC**
                    3311 Bear Point Circle
                    Powell, OH 43065
                    Phone: (614) 756-5566
                    jpetroff@lawforlabor.com
                    jmcinerney@lawforlabor.com

                    Rod Tanner (Texas State Bar No. 19637500)
                    Tanner and Associates, PC
                    6300 Ridglea Place, Suite 407
                    Fort Worth, Texas 76116-5706
                    Ph: 817.377.8833
                    Fax: 817.377.1136
                    rtanner@rodtannerlaw.com

                    *Counsel for Defendant BLET*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 11, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will provide electronic notice and copies of such filing to the parties.

                    /s/ *James Petroff*

2

2021 WL 2784318
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas, El Paso Division.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, Plaintiff,
v.
UNION PACIFIC RAILROAD COMPANY, Defendant.

EP-21-CV-122-DB
|
Signed 07/02/2021

**Attorneys and Law Firms**

James Petroff, Pro Hac Vice, Joshua D. McInerney, Pro Hac Vice, Barkan Meizlish, LLP, Columbus, OH, Rod Tanner, Tanner and Associates PC, Fort Worth, TX, for Plaintiff.

Andrew J. Rolfes, Pro Hac Vice, Robert S. Hawkins, Pro Hac Vice, Cozen O'Connor, Philadelphia, PA, Oscar Arnulfo Lara, Rincon Law Group, P.C., El Paso, TX, for Defendant.

**MEMORANDUM OPINION AND ORDER**

DAVID BRIONES, SENIOR UNITED STATES DISTRICT JUDGE

*1 On this day, the Court considered Defendant Union Pacific Railroad Company's ("UP") "Amended Motion to Dismiss with Incorporated Memorandum of Law" ("Motion") filed on June 1, 2021. ECF No. 11. Plaintiff Brotherhood of Locomotive Engineers and Trainmen ("BLET") filed a "Memorandum in Opposition" ("Response") on June 22, 2021. ECF No. 44. After due consideration, the Court will deny UP's Motion.

**BACKGROUND**

This case presents a cautionary tale about how wounded pride and delicate egos—of grown men—can escalate a personal conflict to a federal court case, drawing in large institutions and their competing agendas. Nevertheless, those institutions—a union and a corporation—are now parties before the Court, and the Court must now adjudicate the matter. Accordingly, the Court now considers the instant Motion.

The legal issues in this case arise from UP's indefinite suspension and disciplinary investigation of five officers and one other member of BLET Division 192. Compl. ¶¶ 2, 12–13, ECF No. 1; Mot. 2-3, ECF No. 11. BLET is a labor union representing locomotive engineers and trainmen employed by UP. Compl. ¶ 4, ECF No. 1. Headquartered in El Paso, Texas, BLET Division 192 ("local division") is a local division of BLET and has "the exclusive responsibility of providing day-to-day representation to the BLET-represented employees working for [UP]." Id. ¶ 6.

But the dispute in this case has more personal origins. Three union members—local division Local Chairman Peter Shepard ("Mr. Shepard"), Vice Local Chairman Joe Reyes ("Mr. Reyes"), and David Cisneros ("Mr. Cisneros")—engaged via Facebook and text message • in an argument over Mr. Cisneros taking "shoves." Facebook Posts and Text Messages, ECF 11-1 at 7–26; Compl. ¶ 23, ECF No. 1. A locomotive engineer takes a "shove" when he voluntarily takes extra work, at the request of UP, outside of his regular assignment. Compl. ¶ 23, ECF No. 1; Mot. 2, ECF No. 11. BLET characterizes the taking of "shoves" as "procompany," and the local division had requested that union members not take them. Compl. ¶ 23, ECF No. 1.

The argument between the three union members escalated into a physical altercation immediately before an off-duty, off-property union meeting.[1] Compl. ¶¶ 2, 14, ECF No. 1. After the fight, Mr. Shepard and Mr. Reyes were suspended, indefinitely and without pay, by UP. Compl. ¶ 2, ECF No. 1. UP also suspended, indefinitely and without pay, local division President David Butler, Secretary-Treasurer John Moye, Vice Local Chairman and Alternate Trustee Kevin Seale, and union member Joe Telehany. Id. BLET maintains that those four were bystanders to the fight. Id. ¶ 14. Mr. Cisneros was not suspended. Id. ¶ 22.

*2 UP also initiated disciplinary investigations into the six suspended union members. Id. ¶¶ 13, 15–17; Mot. 2–3, ECF No. 11. "UP has charged all these men with failing to intervene in the fight and failing to report the incident at the Union meeting to UP management." Compl. ¶ 15, ECF No. 1. In addition, UP charged Mr. Shepard and Mr. Reyes with violation of "Item 10-I: Union Pacific Railroad Policies

– Policy to Address Violence & Abusive Behavior in the Workplace." *Id.* ¶ 20.

BLET argues that the policy against violence does not authorize discipline for off-duty conduct at a union meeting. *Id.* ¶¶ 20–21. In its Complaint, BLET requests injunctive relief including reinstatement of the six suspended union members to their former positions and termination of the disciplinary investigations, which BLET characterizes as "surveillance of the Union and its members." *Id.* at 16. BLET also requests "a declaratory judgment that [UP]'s conduct in taking adverse action against said Union members was in violation of ... the Railway Labor Act [("RLA")]." *Id.* at 17. Finally, BLET requests monetary damages. *Id.*

**LEGAL STANDARD**

In its Motion, UP argues that this Court should dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") for lack of jurisdiction. Mot. 1, ECF No. 11.

Rule 12(b)(1) permits dismissal if a court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A case is presumed to lie outside the scope of a federal court's subject-matter jurisdiction, and the burden of establishing otherwise rests with the party seeking to invoke the court's jurisdiction. *Id.* "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

In evaluating a motion to dismiss pursuant to Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

Rule 12(b)(1) challenges to subject-matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A Rule 12(b)(1) motion is a factual attack when accompanied by supporting evidence challenging the court's jurisdiction, as UP's Motion does. *Paterson*, 644 F.2d at 523; Exhibits to Mot., ECF No. 11-1. A plaintiff responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject-matter jurisdiction. *Paterson*, 644 F.2d at 523.

**ANALYSIS**

In its Complaint, BLET requests injunctive relief to reinstate the six suspended union members and stop UP's disciplinary proceedings against them because the suspensions and proceedings violate Section 2, Third and Fourth, of the RLA, 45 U.S.C. § 152 ("§ 152"). Compl. ¶¶ 2, 23, 38–47. In the instant Motion, UP seeks to dismiss BLET's Complaint for lack of jurisdiction because disciplinary proceedings are " 'minor dispute[s]' within the meaning of the RLA and must be resolved through the RLA's exclusive dispute resolution processes." Mot. 4, ECF No. 11. Further, UP argues that BLET's claims do not rise to a level warranting jurisdiction for the Court to issue injunctive relief under the RLA. *Id.* at 9.

**\*3** The Court holds that this case presents the exceptional circumstance of a carrier taking actions to weaken a union and thus warranting the Court's jurisdiction under § 152, notwithstanding that the case may also present a minor dispute. The Court finds its holding consistent with case law on the RLA.

**1. This Case Presents an Exceptional Circumstance Warranting the Court's Jurisdiction Under § 152 Notwithstanding That It May Also Present a Minor Dispute.**

"Generally, RLA claims are classed as either 'major' disputes, which fall within district courts' narrow jurisdiction, or 'minor' disputes, which are subject to binding arbitration." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 435 (5th Cir. 2021) (citing *Consolidated Rail Corp. v. Railway Labor Execs. Assn.*, 491 U.S. 299, 303 (1989)). " 'Major' disputes concern 'the formation of collective agreements or efforts to secure them ... They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past." *Id.* (quoting *Elgin, J. &E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)). "In major disputes, 'district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without

the customary showing of irreparable injury.' " *Id.* (quoting *Consolidated Rail Corp.*, 491 U.S. at 303).

Minor disputes, on the other hand, concern an already existing and certified collective agreement and "relate[ ] either to the meaning or proper application of a particular provision [of the agreement] with reference to a specific situation or to an omitted case." *Consolidated Rail Corp.*, 491 U.S. at 303 (quoting *Burley*, 325 U.S. at 723). For example, "[a] minor dispute concerns grievances or the interpretation or application covering rates of pay, rules, or working conditions." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 782-83 (5th Cir. 2012) (quoting *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 230–31 (5th Cir. 2007)).

Generally, minor disputes are resolved through the RLA's mandatory arbitration procedures via adjustment boards, not through federal court litigation. As the Supreme Court has stated:

> The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. Congress considered it essential to keep these so called "minor" disputes within the Adjustment Board and out of the courts.

*Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (internal citations omitted).

Accordingly, the Fifth Circuit has held that "the RLA requires minor disputes that cannot be settled through internal grievance procedures to be resolved through a mandatory, exclusive, and comprehensive resolution process before a claims adjustment board established by the employees' union and the employer through the [collective agreement]." *Ballew*, 668 F.3d at 783.

However, the Fifth Circuit has recognized that federal courts have jurisdiction over even minor disputes in the "exceptional circumstance involv[ing] actions taken by a carrier for the purpose of weakening or destroying a union." *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. ("Railway Carmen")*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990), *cert. denied*, 498 U.S. 846 (1990) (citing *Bhd. of R. R. Trainmen v. Cent. of Georgia Ry. Co. ("Central of Georgia")*, 305 F.2d 605, 608 (5th Cir. 1962)). Under such an exceptional circumstance, federal courts can have jurisdiction under "RLA § 152 [which] protect[s] employees' freedom to organize and to make choice of their representatives without company interference or pressure." *Wright*, 990 F.3d at 435 (quoting *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants* ("*TWA*"), 489 U.S. 426, 440 (1989)) (internal quotations omitted). "Conduct in violation of [§ 152] is subject to restraint by federal court injunction, regardless of whether such conduct also generates a major dispute." *Ruby v. TACA Int'l Airlines, S. A.*, 439 F.2d 1359, 1364 (5th Cir. 1971).

*4 In this case, UP argues that its suspension of the union members are disciplinary matters which are minor disputes within the exclusive jurisdiction of the adjustment board. Mot. 6–9, ECF No. 11. BLET responds "that UP has tried to weaken the Union by suspending all its available local union leaders based upon an off duty, off premises fight." Resp. 3, ECF No. 44. Thus, BLET argues that because this case is characterized by the exceptional circumstance of UP trying to weaken the union, the Court has jurisdiction. *Id.* (citing *Ry. Carmen*, 894 F.2d at 1468 n.10). BLET cites *Central of Georgia* as an instance when the Fifth Circuit held that discipline of a union official was motivated by weakening or destroying the union, thus justifying jurisdiction in federal court notwithstanding that the case may have also presented a minor dispute. *Id.* at 3-5 (discussing *Cent. of Georgia*, 305 F.2d 605).

The Court agrees with BLET. The Court finds substantial evidence that UP is trying to weaken the union, thus creating the exceptional circumstance that warrants the Court's jurisdiction. *Ry. Carmen*, 894 F.2d at 1468 n. 10. Four of the union members suspended by UP were not involved in the fight but were merely bystanders. Compl. ¶ 2, ECF No. 1. Three of those four were officers of the local division; thus, a substantial portion of the local division's leadership was suspended. *Id.* The individual involved in the fight arguing for the "procompany" position, Mr. Cisneros, was not suspended. *Id.* ¶¶ 22–23; Resp. 5, ECF No. 44. However, the two individuals involved in the fight arguing against the "pro-company" position, Mr. Shepard and Mr. Reyes, were suspended. Compl. ¶¶ 2, 22–23, ECF No. 1; Resp. 5, ECF No. 44. The selective suspensions were contrary to UP's general practice of taking all participants of a fight out of service. Compl. ¶ 22, ECF No. 1; Resp. 5, ECF No. 44.

The aforementioned facts lead the Court to the conclusion that, in disciplining the union members, UP was motivated by a desire to weaken the local division and used the fight as a pretext for its actions. Thus, the case has the exceptional circumstance that warrants the Court's jurisdiction notwithstanding that it may also present a minor

App. 3

dispute. *Ry. Carmen*, 894 F.2d at 1468 n. 10. BLET has met its burden of proving by a preponderance of the evidence that the Court has subject-matter jurisdiction. *Paterson*, 644 F.2d at 523.

### 2. Finding Subject-Matter Jurisdiction is Consistent with Case Law on the RLA.

The Court is also convinced by this case's similarity to *Central of Georgia* that the Court has jurisdiction. 305 F.2d at 608. In *Central of Georgia*, a railroad employee and union representative, Byington, was investigated and disciplined by the railroad company. *Id.* at 606. "The charge against Byington was that as an employee of the Railroad, his efforts to prevent or discourage employees of the Railroad ... from making settlement claims involving personal injuries, and his improperly making unsolicited calls on persons for the purpose of inducing ... lawsuits against the Railroad constituted gross disloyalty to the Railroad by inciting and promoting lawsuits against the company." *Id.* (internal citations and alterations omitted). In finding jurisdiction under § 152 to enjoin the disciplinary proceeding, the Fifth Circuit explained that:

> On the one hand, status as bargaining representative does not insulate Byington as an employee from lawful disciplinary action. On the other hand, the Railroad may not use the disciplinary proceedings as a guise for thwarting, or frustrating, or undermining the effectiveness of the Brotherhood, or Byington as its agent, in their statutory responsibilities as bargaining representatives.

*Id.* at 609 (internal citations omitted).

Like Byington in *Central of Georgia*, the suspended union members in this case, five of them local division officials, were disciplined after acting contrary to UP's interest. Compl. ¶ 23, ECF No. 1. Whereas Byington was acting contrary to the company's interest by discouraging employees from settling claims and encouraging lawsuits, the local division officials were requesting that union members not take shoves. *Id.*

**\*5** UP argues that union representatives are not shielded from disciplinary actions by their status as representatives. Mot. 8, 15, ECF No. 11. The Fifth Circuit in *Central of Georgia* acknowledged that "status as bargaining representative does not insulate ... an employee from lawful disciplinary action." 305 F.2d at 609. However, the Fifth Circuit explained that "the Railroad may not use the disciplinary proceedings as a guise for thwarting, or frustrating, or undermining the effectiveness of the [union or its agents] in their statutory responsibilities as bargaining representatives." *Id.* The Court finds that UP has used disciplinary proceedings concerning the fight as a pretext for undermining BLET. *See supra* 7-8. Thus, the Court has jurisdiction to enjoin the disciplinary proceedings. *Cent. of Georgia*, 305 F.2d at 609.

UP argues that the cases cited by BLET—*Central of Georgia*, 305 F.2d 605, and *Railway Carmen*, 894 F.2d 1463—are limited by the Supreme Court case *TWA*, 489 U.S. 426. Mot. 13, ECF No. 11. UP asserts that *TWA* holds that § 152 "address[es] primarily the *precertification* rights and freedoms of *unorganized employees*." *Id.* at 9 (quoting *TWA*, 489 U.S. at 440) (emphasis by UP). Therefore, UP argues, the Court does not have jurisdiction in this post-certification context with organized employees. *Id.* at 9-15.

The Court does not read *TWA* and subsequent cases as limiting either *Central of Georgia* or *Railway Carmen*, the latter decided after *TWA*. Following *TWA*, the First Circuit stated in *Amtrak v. IAM*:

> In a post-certification controversy such as the one here, judicial intervention under [§ 152] is limited to circumstances where the employer's conduct has been motivated by anti-union animus or an attempt to interfere with its employees' choice of their collective bargaining representative... or constitutes discrimination or coercion against the representative, ... or involves acts of intimidation [which] cannot be remedied by administrative means.... Judicial intervention would also be permitted under [§ 152] if the employer engaged in a fundamental attack on the collective bargaining process, or a direct attempt to destroy a union.

915 F.2d 43, 51 (1st Cir. 1990) (internal quotations and citations omitted); *see also* Mot. 10, ECF No. 11 (quoting the above passage).

Thus, while *TWA* may hold that § 152 protects *"primarily* the precertification rights and freedoms of unorganized employees,"* 489 U.S. at 440 (emphasis added), courts post *TWA* have still found jurisdiction possible in the post-certification context when the employer's conduct is "motivated by anti-union animus." *See, e.g., IAM*, 915 F.2d at 51. This is consistent with the "exceptional circumstance" exception in *Central of Georgia*, 305 F.2d at 608, and *Railway Carmen*, 894 F.2d at 1468 n.10. And courts, including the Fifth Circuit, have continued to recognize the "exceptional circumstance" exception after *TWA*. *See, e.g., Allied Pilots Ass'n v. Am. Airlines, Inc.*, 898 F.2d 462, 465–66 (5th Cir.

1990); *PHI, Inc. v. Off. & Pro. Emps. Int'l Union*, No. CIV.A. 06-1469, 2007 WL 4097345, at *4 (W.D. La. Nov. 16, 2007), aff'd, 440 F. App'x 394 (5th Cir. 2011).

**CONCLUSION**

The Court holds that this case presents the exceptional circumstance of UP taking actions to weaken BLET, thus warranting the Court's jurisdiction under § 152.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Union Pacific Railroad Company's "Amended Motion to Dismiss with Incorporated Memorandum of Law," ECF No. 11, is **DENIED.**

**All Citations**

Slip Copy, 2021 WL 2784318

Footnotes

1    The parties dispute some of the details of the fight, such as who was the aggressor and who initiated physical contact. *See generally* Hearing Transcript, ECF No. 39. Much of the June 10, 2021 hearing was devoted to establishing these details. *See id.* And, to establish these details, BLET sought to admit a security camera video purportedly showing the fight. *See* Def.'s Mot. to Exclude Video Evid., ECF No. 29; Pl.'s Mot. to Admit and Proffer of Video Evid., ECF No. 41; Def.'s Memo. Of Law in Opp., ECF No. 45. The Court ultimately excluded the video evidence. Order, ECF No. 48. However, the Court does not find these disputed details, even if established, determinative in deciding the instant Motion. Both parties agree that there was a fight and that UP stated the fight was the reason for disciplining the union members. *See* Compl. ¶¶ 12–13, ECF No. 1; Mot. 2-3, ECF No. 11. Accordingly, the Court will base its decision solely on these undisputed facts, although it could also resolve disputed facts in deciding a Rule 12(b)(1) motion. *Ramming*, 281 F.3d at 161.

---

**End of Document**      © 2022 Thomson Reuters. No claim to original U.S. Government Works.