IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BNSF RAILWAY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-0052-P |
| | § | |
| INTERNATIONAL ASSOCIATION OF | § | |
| SHEET METAL, AIR, RAIL AND | § | |
| TRANSPORTATION WORKERS – | § | |
| TRANSPORTATION DIVISION, | § | |
| | § | |
| Defendant. | § | |

# DEFENDANT SMART-TD'S REPLY IN SUPPORT
# OF ITS MOTION FOR A PRELIMINARY INJUNCTION

SANFORD R. DENISON
Tex. Bar No. 05655560
Baab & Denison, LLP
6301 Gaston Ave., Suite 550
Dallas, TX 75214

KEVIN C. BRODAR
General Counsel
Ohio Bar No. 52854
ERIKA DIEHL-GIBBONS
Associate General Counsel
Ohio Bar No. 86424
SMART-TD
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070

*Counsel for Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD")*

Dated: February 11, 2022

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii
I. INTRODUCTION ............................................................................................................ 1
II. THIS DISPUTE IS MAJOR............................................................................................. 2
   A. BNSF Mistakenly Attempts to Asserts that Major Disputes Are Non-Existent. ................. 2
   B. The Status Quo Must Be Maintained .................................................................................. 6
III. This Matter Presents an Independent Statutory Dispute. ......................................................... 8
IV. CONCLUSION ............................................................................................................... 10
CERTIFICATE OF SERVICE .................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Atlas Air v. Int'l Bhd. of Teamsters,* 280 F. Supp. 3d 59 (D.D.C. 2017) ....................................... 2

*Ass'n of Prof'l Flight Attendants v. American Airlines, Inc.*,
843 F.2d 209 (5th Cir. 1988) ........................................................................................................ 8

*Ass'n of Flight Attendants v. United Airlines, Inc.*,
No. 21-CV-01674, 2022 WL 252030 (D.D.C. Jan. 27, 2022) ........................................................ 8

*Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) ............................................. 10

*Bhd. of Loco. Eng'rs v. Springfield Terminal Ry.*, 210 F.3d 18 (1st Cir. 2000) ............................. 3

*Bhd. of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*,
894 F.2d 1463 (5th Cir. 1990) ...................................................................................................... 8

*Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.,*
394 U.S. 369 (1969) ..................................................................................................................... 7

*BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers – Transp. Div.*,
No. 3:15-cv-1029-M, 2016 WL 1242627 (N.D. Tex. Mar. 30, 2016) ........................................... 5

*BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers – Transp. Div.*,
4:21-CV-00432-P, 2021 WL 2695141 (N.D. Tex. Mar. 19, 2021) ............................................... 5

*Burlington N. R.R. v. United Transp. Union*, 862 F.2d 1266 (7th Cir. 1988) ............................ 3, 4

*Burlington N. & S.F. Ry. v. Bhd. of Maint. of Way Empl.*,
143 F. Supp. 2d 672 (N.D. Tex. 2000) (McBryde, J.), *aff'd*, 286 F.3d 803 (5th Cir. 2002) .......... 4

*BNSF v. United Transp. Union*, 462 F.Supp.2d 746 (S.D. Texas 2006) ....................................... 4

*Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299 (1989) ........................... 2, 6, 8

*Detroit & Toledo Shore Line R.R. v. United Transp. Union,* 396 U.S. 142 (1969) .......... 2, 3, 7, 10

*Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472 (6th Cir. 2019) ..................................................... 10

*Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*,
863 F.3d 529 (6th Cir. 2017) ........................................................................................................ 2

*Florida East Coast Ry. v. Bhd. of Loco. Eng'rs*, 362 F.2d 482 (5th Cir. 1966) ........................... 10

*St. Louis Sw. Ry. v. Bhd. of R.R. Signalmen*, 665 F.2d 987 (10th Cir. 1981) ................................. 3

*United Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers,*
243 F.3d 349 (7th Cir. 2001) ...................................................................................................... 7

*United Transp. Union v. Gateway W. Ry.*,
No. 95-0908-CV-W-1 1995 WL 842729, at *2-3 (W.D.Mo. Nov. 14, 1995) ............................... 3

*Wheeling & Lake Erie Ry. Co. v. Bhd. of Loco. Eng'rs & Trainmen*,
789 F.3d 681 (6th Cir. 2015) ................................................................................................. 2, 4

<u>Statutes</u>

29 U.S.C. §§ 2601-2654 ................................................................................................................ 8
45 U.S.C. §§ 151-88 ...................................................................................................................... 1
45 U.S.C. § 152 .......................................................................................................................... 6, 7
45 U.S.C. § 156 ............................................................................................................................. 7

## I. **INTRODUCTION**

Defendant the International Association of Sheet Metal, Air, Rail, and Transportation Workers – Transportation Division ("SMART-TD" or the "Union") submits the following as its Reply in Support of its Motion for Preliminary Injunction. As demonstrated below and as set forth in the Union's Brief in Support of its Motion for Preliminary Injunction and its Opposition to Plaintiff Burlington Northern Santa Fe Railway Company's ("BNSF" or "the Carrier") Motion for Preliminary Injunction, BNSF's unilateral imposition of its draconian Hi Viz availability policy is a major dispute under the Railway Labor Act ("RLA" or "the Act"), 45 U.S.C. §§ 151-88, and must be enjoined.

BNS, still refusing to take this matter seriously, attempts to make light of SMART-TD's attempt to remedy BNSF's draconian availability policy. As the Court is well aware, BNSF's employees do not find this matter one to be made light of and neither does SMART-TD. Hi Viz is not some tweak or "just a revision" to its attendance policy. It is a major change to the employees' ability to mark off. SMART-TD has presented only several of the real-life examples we have received that show how this policy affects employees. BNSF's response, "those are not correct." It is a calculating coldness to deny stories of single moms having to drive eight hours to get their children proper medical care and fathers who cannot take time off to being with the sick children. Perhaps BNSF should sit down and actually listen to their employees, and find out these cases are indeed quite true.

As SMART-TD has repeatedly stated, the industry is a dangerous place to work. Employees who are overworked and fatigued put themselves in harms way for this Carrier. Unfortunately, this devotion along with BNSF's continued push to make employees work longer leads to no good result. Sadly, just yesterday, a BNSF employee was killed in a rail accident.

1

*See, e.g.,* BNSF Rail Employee Dies After Accident Involving Train*,* CBS Local News, *available at* https://denver.cbslocal.com/2022/02/09/deadly-train-accident-bnsf/. At least two others have recently suffered this same fate. *See* NTSB Investigates Death of BNSF Employee from Hannibal, *available at* https://khqa.com/news/local/ntsb-investigates-death-of-bsnf-employee-from-hannibal; NTSB to Investigate Fatality at BNSF Rail Yard in Southern California, *available at* https://www.freightwaves.com/news/ntsb-to-investigate-fatality-at-bnsf-rail-yard-in-southern-california. While BNSF waxes poetic, employees' families are burying their loved ones.

## II.    THIS DISPUTE IS MAJOR

### A.  BNSF Mistakenly Attempts to Asserts that Major Disputes Are Non-Existent.

The Carrier boldly, and incorrectly, contends that the Unions have ***never*** prevailed in its challenge. (D.E. 53 at 1). This is false, as it seemingly recognizes a few pages later. (*Id.* at 4 (distinguishing *Wheeling & Lake Erie Ry. v. Bhd. of Loco. Eng'rs & Trainmen*, 789 F.3d 681, 696 (6th Cir. 2015) (hereinafter "*W&LE*") and *Detroit & Toledo Shore Line R.R. v. United Transp. Union,* 396 U.S. 142 (1969) (hereinafter "*Shore Line*")). While the burden on the Carrier is low, it is <u>not</u> non-existent. Indeed, there have been several occasions where the courts have seen through the excuses proffered by Carriers to find disputes to be major, many of which, contrary to BNSF, have occurred post-*Consolidated Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303-04, 312 (1989) ("*Conrail*"). *See, e.g., Atlas Air, Inc. v. Intern. Broth. of Teamsters*, 928 F.3d 1102 (D.C. Cir. 2019) (finding economic pressure campaign mounted during negotiations constituted major dispute); *Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108*, 863 F.3d 529 (6th Cir. 2017) (finding dispute over integrating seniority list of newly merged airlines was a major dispute); *W&LE*, 789 F.3d at 696 (finding carrier's violation of the

crew consist provision to be a major dispute where carrier disregarded the CBA while Section 6 negotiations were in progress on that precise issue); *Shore Line*, 396 U.S. 142 (enjoining employer's attempt to change working conditions without bargaining); *Bhd. of Loco. Eng'rs v. Springfield Terminal Ry.*, 210 F.3d 18, 31-32 (1st Cir. 2000) (finding carrier's failure to negotiate right to contract out work in CBA and subsequent attempt to contract out work to related corporation raised major dispute); *St. Louis Sw. Ry. v. Bhd. of R.R. Signalmen*, 665 F.2d 987, 998 (10th Cir. 1981); *United Transp. Union v. Gateway W. Ry.*, No. 95-0908-CV-W-1 1995 WL 842729, at *2-3 (W.D.Mo. Nov. 14, 1995) (finding major dispute where carrier ignored seniority provisions in contract and promoted employees out of order.).

Moreover, BNSF apparently has short memory regarding one of its attempts to avoid bargaining which ended up as a major dispute. *Burlington N. R.R. v. United Transp. Union*, 862 F.2d 1266, 1277 (7th Cir. 1988) (hereinafter "*Winona Bridge*"). There, the Carrier tired of bargaining, decided to create a wholly-owned subsidiary, a sham with only five employees, so that it could avoid bargaining. The Carrier argued that it had a past practice of unilaterally engaging in trackage rights agreements based on forty or so such agreements in the last decade, and that because its position was arguable, a minor dispute was involved. *Id.* at 1273, 1277. BNSF argued much the same as it does here, that they have a long history of past practice. While the Seventh Circuit recognized that "the past practice in effect becomes a part of the implied-in-fact contract between the carrier and union, and such disputes amount to an interpretation of the contract," it correctly saw through BNSF's tactics and found the dispute to be major.

> But Burlington has shaded the issue. This dispute does not simply concern, as Burlington suggests, the type of trackage rights agreement in which the Unions have repeatedly acquiesced. Rather, this is an attempt by a carrier to evade unilaterally the statutory and contractual rights vested in the Unions through the use

> of a trackage rights agreement destined to convey rights over its Northern Line, approximately 1,800 miles of track, to a wholly owned, five-employee subsidiary which utterly lacks any of the necessary equipment to service such a line. … Burlington's argument that it has an implied contractual right to alter unilaterally crew consists is simply too insubstantial to sustain.

*Id.* at 1273.

BNSF's attempts to distinguish *W&LE* also fail. In that case, the railroad had tried to reduce the size and complement of crews at the bargaining table, but was unsuccessful. Then, it began running trains without the required complement of crews, asserting that such was arguably permitted under its interpretation of the CBA. The Sixth Circuit found the carrier's proffered argument "frivolous or obviously insubstantial" in light of the express CBA language at issue. 789 F.3d at 690.[1] Instead of relying on an interpretation of any CBA language under the SMART-TD agreement, BNSF here relies on a purported practice of unilaterally altering the attendance policy. However, as in *Winona Bridge*, the Carrier's proffered "past practice" argument here is "frivolous or obviously insubstantial" in light of the established rules and working conditions in effect under the prior attendance policy. *Winona Bridge*, 862 F.2d at 1273.

BNSF then attempts to draw parallels between SMART-TD and the union in *Burlington N. & S.F. Ry. v. Bhd. of Maint. of Way Empl.*, 143 F. Supp. 2d 672 (N.D. Tex. 2000), *aff'd*, 286 F.3d 803 (5th Cir. 2002) (hereinafter "*BNSF v. BMWE*"), where a ten-day notice injunction was issued against the Brotherhood of Maintenance of Way Employees ("BMWE") following its practice of engaging in a high number of unlawful strikes. Such comparisons have been previously and routinely rejected. Indeed, in *BNSF v. United Transportation Union*, 462 F.Supp.2d 746 (S.D. Texas 2006), the court rejected the railroads' request for a notice injunction against SMART-TD's predecessor, finding that SMART-TD's predecessor had no history or

---

[1] None of the bulleted reasons purportedly in support of BNSF's "arguable basis" are directed at SMART-TD. (D.E. 53 at 5-6).

4

ongoing policy of engaging in unlawful strike activity that was a threat to commerce. *Id.* at 763.[2] BNSF then backslides, acknowledging that the Union here does not have a tendency to strike without warning but has a "similar stubborn inability to distinguish major from minor," leading to what they say is "decades of wasteful and repetitive litigation." (D.E. 53 at 1). The incredible irony of that statement is that the majority of this "wasteful and repetitive litigation" was <u>brought</u> by the respective Carriers, including BNSF, <u>not</u> the Union.

This case is no different. It is BNSF who creates these issues by chipping away at the parties' agreements, exploiting the Act to get through a legal loophole what it is unable to achieve at the bargaining table. Then, when the Union objects, often by a strongly worded letter, BNSF rushes to court rather than act like a mature entity and try to resolve matters through discussion and negotiation. Importantly, however, and an anathema to BNSF, the Union has every right to disagree with the Carrier's characterization of a particular dispute as minor. Although BNSF has repeatedly tried, and repeatedly failed, it cannot circumvent that legal right and force the Union to agree to its characterization of a dispute. *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail and Transp. Workers – Transp. Div.*, No. 4:21-cv-00432-P, 2021 WL 2695141 (N.D. Tex. Mar. 19, 2021) (J. Pittman); *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail and Transp. Workers – Transp. Div.*, No. 3:15-cv-1029-M, 2016 WL 1242627 (N.D. Tex. Mar. 30, 2016) (J. Lynn).

Indeed, BNSF's frequent trips to the courthouse could be avoided if it would abide by the Act's requirements and this Court's directive to sit down and talk with the Union. That is indeed SMART-TD's preference. Unfortunately, it is BNSF who wishes to repeatedly litigate.

---

[2] The court distinguished *BNSF v. BMWE*, noting that in contrast to the case at hand, the notice injunction was warranted against BMWE where BMWE had engaged in "*eighteen* incidents against *one* carrier [BNSF]… over the past *nine* years." *Id.* at 763.

5

Finally, it is imperative that the Court understand that the relief sought by the Unions is not to bring commerce to a standstill. SMART-TD is seeking to stop the Railroad from its offending conduct, *i.e.* the unilateral imposition of the Hi Viz availability policy. A strike would not ensue from the grant of the Union's requested injunction; rather, the dispute would be resolved, as the status quo as it existed prior to February 1, 2022, would be maintained.

The parties have repeated their respective arguments in the various briefs to date. SMART-TD has made a compelling case that this matter is a major dispute, while BNSF predictably contends it has met its minimal burden to show that the dispute is minor. Those arguments do not need to be rehashed here. However, BNSF's attempt to mischaracterize this dispute is the one in error. Because the instant dispute is major, BNSF should be enjoined from unilaterally altering the status quo and be ordered to return to the status quo that existed prior to its implementation of the Hi Viz availability policy.

### B.  The Status Quo Must Be Maintained

At the outset, BNSF mischaracterizes SMART-TD's argument regarding the status quo argument and ongoing bargaining, contending that the Union argues that "if the subject of a dispute is the same or similar to topics being discussed in bargaining, then the dispute is *per se* major." (D.E. 53 at 3). SMART-TD is not seeking a workaround of *Conrail,* nor some *per se* rule, as BNSF now alleges. Indeed, it is BNSF that has the "backward logic" here. BNSF's Hi Viz availability policy changes the established "rules and working conditions" while the parties are <u>actively engaged in bargaining over those very same</u> "rules and working conditions." Section 2, First states:

> It <u>shall be the duty of all carriers</u>, their officers, agents, and employees to exert every reasonable effort <u>to make and **maintain agreements** concerning</u> rates of pay<u>,</u> **rules, and working conditions,** and to settle all disputes, whether arising out of the application of such agreements or otherwise …

6

45 U.S.C. § 152, First (emphasis added). Section 2, Seventh states:

> <u>No carrier</u>, its officers or agents <u>shall change the rates of pay, rules or working conditions</u> of its employees as a class as embodied in agreements **except** in the manner prescribed in such agreements or in section 156 of this title.

45 U.S.C. § 152 Seventh (emphasis added). These words are not mere surplusage in the Act. They are the "heart" and soul of the Act. *United Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers,* 243 F.3d 349, 361 (7th Cir. 2001) (citing *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 377-78 (1969)). Moreover, "rules and working conditions are to be <u>broadly conceived</u>. See *Shore Line*, 396 U.S. at 152-53. To effectuate the purpose that Congress deemed critical to the functioning of the Act, these words must be given meaning. To do otherwise is to render them nugatory. Here, there is no dispute that both BNSF and SMART-TD have placed the employee attendance and availability rules directly on the table. The words of Section 2 First, Seventh and Section 6 cannot be ignored. 45 U.S.C. § 152, First, Seventh, 156. Congress intended that they be fully obeyed. BNSF cannot simply ignore this required process.

The status quo that must be maintained are the "rules and working conditions" in effect under the attendance policy that existed prior to the implementation of the Hi Viz policy. That policy permitted 25% unavailability and permitted an employee to lay off on average five weekdays and two weekend days per month; and did not treat union representations or employees on FMLA leave differently. That is the status quo which must be maintained. Because the dispute is major, not minor, BNSF's attempt to distinguish the Supreme Court's status quo explanation in *Shore Line* fails. (D.E. 53 at 4). BNSF's attempt to ignore and mischaracterize the events that lead to this dispute cannot be sanctioned.

### III. This Matter Presents an Independent Statutory Dispute.

As SMART-TD demonstrated at length in its Motion for a Preliminary Injunction and its Opposition to BNSF's Motion, the Hi Viz availability policy on its face discriminates against individuals who are union officers unavailable for their railroad work when off on union business, in violation of Sections 2 Third and Fourth of the RLA, 45 U.S.C. § 152 Third, Fourth, and those who take leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, by foreclosing such employees from receiving attendance credits and by assessing additional point "Conjunction penalties." (D.E. 46 at 16-19; D.E. 50 at 9-10).

BNSF first asserts that the statutory RLA claim cannot circumvent *Conrail*, relying on *Ass'n of Flight Attendants v. United Airlines, Inc.*, No. 21-CV-01674, 2022 WL 252030 (D.D.C. Jan. 27, 2022). However, that case involved a disciplinary matter of two flight attendances who were union representatives. The question of whether they could properly be disciplined under Section 23 of the CBA involved an interpretation of that Section. *Id.* at *4-5. It did not involve a Company-wide policy that had a specific assessment for performing one's duties as a union officer. Indeed, while the true motives of BNSF's policy may be revealed through discovery, it appears that the penalties assessed to the union officers under the Hi Viz policy are "for the purpose of weakening or destroying" the Union, as it has alleged. *Bhd. of Ry. Carmen (Div. of TCU) v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463, 1468 n.10 (5th Cir. 1990).

Similarly, *Ass'n of Prof'l Flight Attendants v. American Airlines, Inc.*, 843 F.2d 209, 211-12 (5th Cir. 1988), is inapposite here. In that case, the court found that the parties' dispute over whether employees were permitted to wear union buttons was "minor," and did not "threaten the ability of the union to *represent* the flight attendants since there are both other times and places that the button can be worn, and other channels such as mail and leaflets that enable the union to

8

influence public opinion." *Id.* at 211.That has no relation to the facts of this case. Critical to that case was the express language of Article 5-A of the CBA, which provided that "flight attendants shall wear standard uniforms in such manner and as prescribed in Company regulations." Those applicable regulations stated, in pertinent part, "*Union Pin.* The *authorized* pin may be worn ½ inch above the wings or on the coat collar. The regulations preclude the wearing of any accessories that are not explicitly authorized." *Id.* at 211-12 (emphasis in original). This case not about wearing pins, but rather about being able to mark off to represent a member without suffering discipline.

Here, however, the Hi Viz availability policy does threaten the ability of the union to *represent*. The Local Chairpersons who are on the frontline of CBA enforcement and representation of members with disciplinary matters, are at BNSF's mercy and adversely impacted as a result. BNSF flippantly alleges that local officers can just "cover for each other." (D.E. 53 at 12). As BNSF well knows, this is not shift swapping at the local diner. Not only does this ignore the practical reality that these 220 Local Chairpersons have a defined jurisdiction, they are at the sole mercy of the Carrier's scheduling of investigations, and some terminals have an excess of over 500 employees with an average of 10 to 15 investigations per week. (D.E. 51, Sec. Ferguson Decl. ¶ 3 (App. 002), Swiatek Decl. ¶ 12 (App. 009)). These LCs cannot avoid being adversely affected.

With regard to the FMLA, as explained in SMART-TD's Opposition brief, again, SMART-TD is not asserting that a violation of the FMLA constitutes a major dispute, but that an independent statutory violation is separate and distinct from the major/minor dispute. (D.E. 50 at 9). Accordingly, a violation of FMLA does not constitute a major dispute and would not allow the Union to engage in self-help in isolation, and would also not entitle BNSF to engage in self-

9

help, *i.e.* unilateral imposition of its policy. While BNSF goes to great lengths to raise a "plain language argument" under the FMLA, this same argument was rejected by the Sixth Circuit in *Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472 (6th Cir. 2019).

> The plain language of the FMLA is clear. At the expiration of the employee's leave period, she must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment." *Bryson*, 498 F.3d at 569-70 (citing 29 U.S.C. § 2614(a)(1)). Therefore, denying a valuable term or condition of employment to an employee taking FMLA leave interferes with the right to take that leave. Put differently, "attaching negative consequences to the exercise of protected rights surely 'tends to chill' an employee's willingness to exercise those rights." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).

934 F.3d at 476 (emphasis added). It should be similarly rejected here.

## IV.    CONCLUSION

As demonstrated herein and in SMART-TD's Brief in Support of its Motion for Preliminary Injunction and SMART-TD's Opposition to BNSF's Motion for Preliminary Injunction, the dispute here is major. *Shore Line,* 396 U.S. at 148-54; *Florida East Coast Ry. v. Bhd. of Loco. Eng'rs*, 362 F.2d 482, 483 (5th Cir. 1966). Accordingly, SMART-TD asks that the Court grant its Motion, deny BNSF's Motion, enjoin BNSF's implementation of the Hi Viz policy, and direct that BNSF negotiate pursuant to the mandates of Section 6.

Dated: February 11, 2022                           Respectfully Submitted:

                                                     /s/ Sanford R. Denison
                                                   SANFORD R. DENISON
                                                   Tex. Bar No. 05655560
                                                   Baab & Denison, LLP
                                                   6301 Gaston Ave., Suite 550
                                                   Dallas, TX 75214
                                                   Tel.: (214) 637-0750
                                                   Fax.: (214) 637-0730
                                                   Email: denison@baabdenison.com

                                                   KEVIN C. BRODAR
                                                   General Counsel
                                                   Ohio Bar No. 52854

10

        ERIKA A. DIEHL-GIBBONS\*
        Associate General Counsel
        Ohio Bar No. 86424
        SMART-TD
        24950 Country Club Blvd., Ste. 340
        North Olmsted, OH 44070
        Tel:  (216) 228-9400
        Fax: (216) 228-0937
        Email: kbrodar@smart-union.org
        Email: ediehl@smart-union.org

*Counsel for Defendant International Association of Sheet Metal, Air, Rail and Transportation Workers – Transportation Division ("SMART-TD")*

\* Application for Admission
  *Pro Hac Vice* Forthcoming

11

## CERTIFICATE OF SERVICE

I certify that on this 11th day of February, 2022, a true and correct copy of the foregoing document was served on counsel for all parties of record listed below by a means permitted by Rule 5(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P.").

David M. Pryor
BNSF Railway Co.
2500 Lou Menk Dr.
AOB-3
Fort Worth, TX 76131-2828
Tele: 817-352-2286
Fax: 817-352-2399
Email: david.pryor@bnsf.com

Donald J. Munro
Jones Day
51 Louisiana Ave NW
Washington, DC 20001-2113
Tele: 202-879-3939
Fax: 202-626-1700
Email: dmunro@jonesday.com

Russell D. Cawyer
Taylor J. Winn
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102-3194
Tele: 817-332-2500
Fax: 817-878-9280
Email: russell.cawyer@kellyhart.com
Email: taylor.win@kellyhart.com

Rod Tanner
Tanner and Associates, PC
6300 Ridglea Place, Suite 407
Fort Worth, Texas 76116-5706
Tele: 817-377-8833
Fax: 817-377-1136
Email: rtanner@rodtannerlaw.com

    */s/ Sanford R. Denison*
    SANFORD R. DENISON